## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DENNIS E. POWELL,**

   **Plaintiff,**

    **v.**          **CASE NO.  24-3241-JWL**

**CENTURION HEALTHCARE**
**SERVICES, et al.,**

   **Defendants.**

### MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Dennis E. Powell is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

### I.  Nature of the Matter before the Court

Plaintiff's Complaint includes a cover page indicating he is bringing this action "only under Title II of the A.D.A."  (Doc. 5, at 1.)  Plaintiff states that the Court "should screen Plaintiff's complaint as being brought 'only under Title II of the A.D.A.' /with § 1983 as 'avenue-in-only'."[1]  *Id*. at 2.  Plaintiff invokes 42 U.S.C. § 12202.  *Id*.  Although Plaintiff is currently incarcerated at the Winfield Correctional Facility in Winfield, Kansas, his claims arose during his incarceration at the Norton Correctional Facility in Norton, Kansas ("NCF"). The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that in 1998–1999, he was originally diagnosed with acute exacerbated pan ulcerative colitis ("UC") at the John Sealy Hospital in Galveston, Texas. (Doc. 5, at 7.)

---

[1] The Court notes that Plaintiff uses the Court-approved form for filing a § 1983 action and makes alterations to the form.  Plaintiff's statement that he is using § 1983 as "avenue-in-only" is unclear.

Plaintiff alleges that from 1999 to 2024, his medical disease and hospitalizations qualified him as a disabled individual under 42 U.S.C. § 12102 and 29 C.F.R. § 1630.2(h)(i), "digestive . . . bowel function." *Id*.

Plaintiff alleges that on December 3, 2018, while he was a KDOC inmate housed at the Sedgwick County Jail, he suffered a serious exacerbated attack of his UC disease "requiring a diagnosed specific qualitative d[i]sease combatant drug treatment of Humira." *Id*. On May 24, 2023, Plaintiff's bi-monthly injections of Humira were discontinued and replaced with "a sub-generic genus (considerably less expensive) drug." *Id*. Humira was replaced with Adalimumab. *Id*. Plaintiff alleges that the substitution was done without any authorized medical physician's order in Plaintiff's medical records. *Id*. Plaintiff alleges that this drug substitution was done by a Chronic Care PA at NCF, and resulted in "d[i]sease reactivity progression and 'life threatening injury'." *Id*. at 4.

Plaintiff alleges that from July 2023 to June 3, 2024, he initiated regular submissions of sick call requests, complaining about concerns of progressive reactivity of his colitis disease. *Id*. at 7. Plaintiff alleges that his UC has continually gotten worse since he was taken off of Humira and it was replaced with Adalimumab. *Id*. Plaintiff had a GI colonoscopy surveillance evaluation at a hospital on July 15, 2024. *Id*. at 8. Plaintiff alleges that:

> Post-consultation, Dr. Grave explains to Plaintiff that in his review and study of Plaintiff's medical records he has discovered a concerning unauthorized medical order entry of the discontinued use of Humira drug and it's [sic] replacement. Doctor Grave said he had tried repeatedly to confer with Centurion Healthcare at the Norton Corr. Facility inconcern [sic] without a response. And that due to his medical concern with finding a very concerning inflamitory [sic] polyp in the distal rectal area he was going to attempt to have my case returned to the G.I./M.D., at St. Francis Hosp. Wichita, who had originally ordered the medicated treatment of Humira for progressive disease.

*Id.*

Plaintiff alleges that on October 21, 2024, "Colonoscopic surveillance" was done by Dr. Porter at Wesley Woodlawn Hospital in Wichita, Kansas.  *Id.*  The October 28, 2024 pathology specimen report for his rectal mass biopsy provides:  "Invasive adenocarcinoma, . . . Suspect Cancer case: Yes."  *Id.*  A November 11, 2024 scatological scan performed by Dr. Christophier Dakhil at William Newton Hospital in Winfield, Kansas, detected three "suspected" cancer spots in Plaintiff's right lung, indicating "possible" stage 5 cancer-terminal.  *Id.*

Plaintiff alleges the "intentional/discriminatory denial of medical specialist(s), diagnosed needed medical treatment – solely by reason of disability."  *Id.* at 3 (cleaned up).  Plaintiff alleges that he was denied Humira—which is necessary to control Plaintiff's "medical disability disease activity"—and given an alternative medication instead.  *Id.*

Plaintiff names as defendants:  Centurion Healthcare Services; Kansas Department of Corrections ("KDOC"); and (fnu) (lnu) Chronic Care Physician Assistant, Centurion Healthcare Services at NCF.  Plaintiff seeks $7,000,000 in monetary damages.  *Id.* at 6.

Plaintiff attaches his grievances where he asserts that he became aware of serious physical harm on August 16, 2024, "caused to my person due (likely) to substandard 'altered original medical need as ordered by G.I. specialist(s).' " (Doc. 5–2.)  Plaintiff also attaches the response from Centurion, which provides:

> Mr. Powell arrived at Winfield Correctional Facility - Medium Unit on 8/5/2024 as a courtesy to Norton Correctional Facility to facilitate medical appointments in Wichita, Kansas. On 6/4/2024 Mr. Powell submitted a sick call at Norton Correctional Facility for "continuously" worsening of ulcerative colitis since taken off of Humira. Patient has been prescribed Amjevita, which is the same as Humira except it also treats several other disease processes outside of ulcerative colitis. It is the latest drug medication which works the same as Humira. It also has the drug, adalimumab, which is exactly what Humira is. He met with Dr. Porter on

8/16/2024 and, per Dr. Porter, Mr. Powell underwent a colonoscopic evaluation on 7/15/2024 for surveillance. The report described no active inflammation with the exception of the distal rectum where a poly[]p was noted.  No abnormalities were noted in polyp during biopsy with the exception of the rectum. Per Dr. Porter, he discussed with Mr. Powell the recommendations of repeating the colonoscopy with plans to proceed with removing the polyp. An outpatient referral was submitted by the Site APRN on 8/26/2024 for the procedure to take place. We are awaiting approval. Once approved, the procedure will be scheduled.

Medical has followed all recommendations of the specialist.

(Doc. 5–3, at 2; *see also* Doc. 5–4, at 2.)

Plaintiff includes his "Operative Report" from his October 21, 2024 procedures at the Wesley Medical Center/Wesley Woodlawn Hospital & ER/Wesley Rehabilitation Center. (Doc. 5–7, at 2.)  Dr. Porter performed the following procedures:  colonoscopy with rectal biopsies using cold forceps; exam under anesthesia; and proctoscopy with rectal biopsies.  *Id*. The operative findings were "[l]arge ulcerated rectal mass comprising nearly 50% of the luminal circumference from the left external border to the posterior midline with proximal border 10 cm from the anal verge on flexible sigmoidoscopy extending to the dentate line."  *Id*. at 3.  The Final Diagnosis on the Pathology Specimen Report for the rectal mass biopsy shows "[i]nvasive adenocarcinoma, well to moderately differentiated."  (Doc. 5–8, at 2.)

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

4

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New*

*Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### 1.  Defendants

#### A.  KDOC

Plaintiff names the KDOC as a defendant.  "A party's capacity to sue or be sued in federal court is determined by state law."  *Sims v. Kansas Dep't of Corr.*, 2019 WL 4450671, at *4 (D. Kan. Sept. 17, 2019) (citation omitted).  "Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued."  *Id.* (citation omitted).  "The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued."  *Id.* (citing K.S.A. § 75-5203).  Furthermore, as an agency of the State, the KDOC has absolute immunity under the Eleventh Amendment to a suit for

6

money damages. *See McGee v. Corizon,* 831 F. App'x 381, (10th Cir. Oct. 14, 2020) (unpublished) ("As to the Kansas Department of Corrections, the Eleventh Amendment bars McGee's claim. It is well-recognized that an action cannot be brought in federal court against a state or its agencies.") (citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State, nor its officials acting in their official capacities are 'persons' under § 1983"). Plaintiff's claims against the KDOC are subject to dismissal. Because Plaintiff has neither made a specific claim against the KDOC, nor shown any waiver of immunity from suit or capacity to be sued, he must show good cause why this defendant should not be dismissed from this action.

## B. Centurion

As set forth below, Plaintiff's claim under the ADA is subject to dismissal. To the extent Plaintiff raises a claim against Centurion under § 1983 in his amended complaint, he must demonstrate the requisite custom or policy. In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to . . . § 1983 suits." *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted);

*Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").

This action is subject to dismissal as against Defendant Centurion. Plaintiff must allege facts showing a policy or a custom of Centurion that caused his injury. Plaintiff has failed to allege such facts. Therefore, Plaintiff is directed to show good cause why his claim against Centurion should not be dismissed.

### C.  Unnamed Centurion Chronic Care Physician Assistant

The caption of Plaintiff's Complaint lists as a defendant "Chronic Care Provider (name?)." (Doc. 5, at 1, 2.) Plaintiff describes this defendant as a "Chronic Care P.A./Centurion Healthcare Service" at NCF. *Id.* at 2. Plaintiff alleges that the Chronic Care PA at NCF discontinued his Humira between April to May, 2024. *Id.* at 4. In another section of the Complaint, Plaintiff alleges that Humira was discontinued and replaced on May 24, 2023. *Id.* at 7. Plaintiff alleges that this was a discriminatory act done "solely-but-for Plaintiff's disability/disease" by Centurion Chronic Care P.A." *Id.*

While a plaintiff initially may sue unknown defendants by naming them as "John Doe," that permission does not last forever. "[T]he Federal Rules of Civil Procedure [do] not permit such actions against unnamed defendants following a suitable length of time for the plaintiff to identify the John Does." *Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012) (unpublished).

As set forth below, Plaintiff's claim under the ADA is subject to dismissal.  Even if Plaintiff names the Chronic Care PA in his amended complaint, he must show that the PA was deliberately indifferent to his serious medical needs to state a claim under § 1983.

### 2.  ADA Claim

Plaintiff states that he is only bringing his claim under Title II of the Americans with Disabilities Act ("ADA").  The ADA prohibits discrimination by government entities on the basis of disability.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  State prisons are within Title II's definition of "public entities." Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998).  Moreover, "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,'" and "[t]he text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons."  Williams v. Colo. Dep't of Corr., 2022 WL 3681255, at *3 (10th Cir. 2022) (quoting Yeskey, 524 U.S. at 210).

 "To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is 'a qualified individual with a disability'; (2) he 'was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" Crane, 15 F.4th at 1312 (quoting J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1295 (10th Cir. 2016)).  The inability to prove any one of these elements precludes an ADA claim.  Id.  "Courts have recognized three ways to establish a discrimination

claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V.*, 813 F.3d at 1295.

The Supreme Court has held that "medical care" is one of the "services, programs, or activities" covered by the ADA. *See United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 881 (2006) (stating that the "deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs in such fundamentals as . . . medical care . . . constituted 'exclu[sion] from participation in or . . . den[ial of] the benefits of' the prison's 'services, programs, or activities' " (quoting 42 U.S.C. § 12132)). "However, courts have differentiated ADA claims based on negligent medical care from those based on discriminatory medical care." *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006) (citations omitted).

In *Sullivan*, the Tenth Circuit affirmed the district court's finding that the plaintiff could not premise his ADA claim on the denial of treatment because he would not be "otherwise qualified" for treatment absent his medical condition. *Sullivan v. Univ. of Kansas Hospital Auth.*, 844 F. App'x 43, 48 (10th Cir. 2021) (unpublished). The Tenth Circuit stated that:

> As we explained in *Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992), when a plaintiff claims disability discrimination based on the failure to receive treatment for a medical condition, "[s]uch a plaintiff must prove that he or she was discriminatorily denied medical treatment because of [a medical condition] and, at the same time, must prove that, in spite of the [medical condition], he or she was 'otherwise qualified' to receive the denied medical treatment." This presents a dichotomy, however, because "if such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for treatment." *Id.*
>
> Here, the district court recognized that Mr. Sullivan could not premise his claims on the denial of treatment because he would not be "otherwise qualified" for treatment absent his medical condition.
>
> * * * *

10

> Last, Mr. Sullivan suggests the district court erred in rejecting his medical malpractice claims under the ADA. The claims are based on his healthcare providers' alleged failure to properly diagnose and adequately treat his medical condition. The district court correctly observed, however, that these types of "purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act," *Fitzgerald*, 403 F.3d at 1144. The district court therefore correctly dismissed these claims.

*Id.* at 48–49.

Other circuits have reached the same conclusion. *See Wenzke v. Munoz*, 800 F. App'x 76, 79 (3d Cir. 2020) (affirming dismissal of the plaintiff's ADA claims because a lawsuit under the ADA cannot be based on medical treatment decisions); *Grant v. Alperovich*, 703 F. App'x 556, 557 (9th Cir. 2017) (affirming the district court's grant of summary judgment because the "assertion of discrimination in medical treatment decisions amounted to a claim of medical malpractice, rather than a claim of discrimination governed by the ADA"); *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231–32 (2d Cir. 2014) ("[A] doctor may refuse to prescribe a particular treatment, which the disabled patient has requested, because of the doctor's assessment (based on an appraisal of the patient's medical condition) that the treatment would be harmful. The doctor's refusal is not discrimination in violation of the statute, even if the doctor's medical analysis is flawed. Such a decision may be malpractice, but it is not discrimination."); *Deweese v. Munyan*, 2021 WL 729097, at *4 (E.D. Ark. 2021) (stating that the Eighth Circuit has repeatedly held that claims under the ADA or Rehabilitation Act cannot be based on medical treatment decisions, including claims regarding the failure to give appropriate medication) (citations omitted).

Plaintiff should show good cause why his ADA claim should not be dismissed based on the Tenth Circuit's reasoning in *Sullivan*.

11

### 2. Eighth Amendment

Plaintiff claims that he is only bringing an ADA claim. However, the Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). Based on the facts alleged in Plaintiff's Complaint, he has a serious medical need.

Plaintiff must also satisfy the subjective prong to state an Eighth Amendment violation. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would

befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff has clearly received medical care for his medical condition. He does not allege that he was denied medication, but takes issue with the change to an alternate medication. Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment or medication. A complaint alleging that plaintiff was not given plaintiff's desired medication, but was instead given other medications,

"amounts to merely a disagreement with [the doctor's] medical judgment concerning the most appropriate treatment." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the doctor's medical judgment in treating a condition with a certain medication rather than others); *Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) (unpublished) (where appropriate non-narcotic medication was offered as an alternative to the narcotic medication prescribed prior to plaintiff's incarceration, a constitutional violation was not established even though plaintiff disagreed with the treatment decisions made by prison staff); *Carter v. Troutt*, 175 F. App'x 950 (10th Cir. 2006) (unpublished) (finding no Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the inmate who missed follow-up appointment for treatment and refused to be examined unless he was prescribed the pain medication he wanted); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.").

Plaintiff has failed to show that any defendant was deliberately indifferent regarding his medication. If Plaintiff intends to assert an Eighth Amendment claim, he should set forth the claim in any amended complaint that he files. He must also allege that a defendant was deliberately indifferent regarding his medical care. The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

## IV.  Motions for Appointment of Counsel

Plaintiff has filed two motions seeking appointment of counsel (Docs. 3, 7).  Plaintiff seeks the appointment of "qualified A.D.A. legal counsel to represent him."  (Doc. 3, at 1; Doc. 7, at 1.)  Plaintiff argues that he is a layman untrained in the law, he only has a G.E.D. and vocational training, this is a complex case involving medical issues and necessitating expert witnesses, because of Plaintiff's Stage 5[2] cancer diagnosis he does not have stamina to navigate the legal course, and "[r]ules of the Law require that justice be measured and applied."  *Id.*

The Court has considered Plaintiff's motions for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims."  *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).  The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has

---

[2] Plaintiff's motions at Docs. 3 and 7 appear to be the same with the exception that his motion at Doc. 7 asserts that he has "Stage 3" invasive cancer.  (Doc. 7, at 1.)

asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motions without prejudice to refiling a motion if Plaintiff's Complaint survives screening.

## V. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[3] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motions for Appointment of Counsel (Docs. 3, 7) are **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **March 20, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be

---

[3] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (24-3241-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **March 20, 2025**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated February 21, 2025, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**